## Graham and Mellor *versus* McCreary.

*Trespass for levying and selling Personal Property.— Vendor of, when a competent Witness for Plaintiff.—Fraudulent Sales, when a question of fact for the Jury.—Errors assigned not regarded unless Bill of Exception be signed.*

1. In an action of trespass against a sheriff for seizing and selling plaintiff's piano under judgment and execution against her son, from whom she purchased it, the vendor is a competent witness on the part of the plaintiff; for both plaintiff and defendant claim title through him, and the sale to the mother, whether fraudulent or not, implied no guarantee of title.

2. A son sold a piano to his mother, and immediately moved to another place, intending to remain, leaving the piano in her exclusive possession ; not succeeding in business, he returned in a few weeks, when his mother again lived with him, the piano remaining in the house, occasionally used by his wife. On execution against the son, it was sold by the sheriff, and in an action of trespass therefor, it was *Held*, That as there was a delivery and transfer of possession, which was retained for several weeks, the transaction was not fraudulent in law, and that if the sale was collusive, it was for the jury to determine it, as a fraud in fact.

3. The proceeds of the execution having been distributed by the auditor, in part to the payment of rent for the house wherein defendant and his mother lived, the auditor's report was offered, in mitigation of damages, but the court below rejected the offer, and defendant did not except. This rejection being assigned for error, it was *Held*, 1. That the assignment could not be regarded, for no bill of exception to the rejection had been sealed by the court below. 2. That the report was not evidence as offered, nor could proof of the amount paid out of the proceeds, for rent, be admitted in evidence, to abate damages, in the action of trespass.

ERROR to the Common Pleas of *Allegheny county*.

This was an action of trespass brought to March Term 1860, by Margery McCreary against James L. Graham, sheriff of Allegheny county, and John H. Mellor, for selling, under a *fi. fa.*, at the suit of said Mellor, a piano, as the property of Dr. William G. McCreary.

In 1855 Dr. McCreary purchased the piano in question from Mellor, and took it to New Brighton, Beaver county, where he was engaged in teaching a female seminary, residing with his family in the house, which had been rented and furnished by his mother. From his mother he borrowed, while there, about $600

[Graham and Mellor *v.* McCreary.]

for the purpose of furnishing and carrying on the seminary. In February 1857, he abandoned the seminary, sold to his mother, in satisfaction of her claim, this piano, with some other articles of household furniture, and removed with his wife to Canonsburg, where he commenced business as a dentist. Mrs. McCreary, the plaintiff, moved to Sewickly, taking with her the goods she had there purchased from her son, where she remained until June 1858. In July 1857, Dr. McCreary and wife removed to Sewickly, where they lived with his mother until June 1858, when they all removed to Pittsburgh, and were living in a house rented by him at the time the levy and sale complained of were made.

In 1859 Mellor obtained judgment against Dr. McCreary for the price of the piano, and instructed the sheriff to take it in execution, together with a side-table, a bedstead, some chairs, and other articles of household furniture.

On the day succeeding the levy, Dr. McCreary gave notice to the sheriff that he claimed the benefit of the three hundred dollar law, and also served a notice on the sheriff, signed by his mother, in which she claimed to be the owner of the piano, and certain other articles of furniture included in the levy. The plaintiff thereupon instructed the sheriff to relinquish all except the piano, which was subsequently sold for $170. This money was brought into court, and an auditor appointed to distribute it, which was done by giving to the landlord $121 for rent in arrear, and $9.96 to Mellor on account, the balance being absorbed by the costs.

This suit was then brought as above stated. On the trial the plaintiff, after giving in evidence the levy and sale of the property by the defendants, called Dr. McCreary to prove that before the levy he had sold the property to his mother; to which offer defendants objected:

1. That as vendor he was the guarantor of the title, and was interested in the result of the cause; and

2. That as the property was found in his possession, and sold by the sheriff to pay his debt, he could not be a witness to explain away the fact of his possession, and prove that prior to the levy he had sold and delivered the property to the plaintiff.

The court (MELLON, P. J.) overruled the objections, and admitted the witness, who testified to the facts above stated.

The defendants then offered in evidence the auditor's report distributing the proceeds of sale, which was rejected by the court below.

Defendant's counsel requested the court to instruct the jury:

1. That to make the sale or transfer by W. G. McCreary to his mother in February 1857 a valid sale, it must have been for a valuable consideration, in good faith and not for the purpose of protecting the property from his creditors, and must have been

[Graham and Mellor *v.* McCreary.]

accompanied by an actual delivery, and followed by a continued possession, distinct and exclusive, in the mother.

2. That if W. G. McCreary, with the knowledge and consent of the plaintiff, had the use and visible possession of the piano from May 1857 to the time of the levy, the transfer to his mother, in February 1857, would be regarded as a fraud in law as to W. G. McCreary's creditors, and plaintiff could not recover.

The court charged the jury as follows:—

"The transfer to the plaintiff's mother must have been made in actual good faith, for a valuable consideration, either present or past, and not collusive to cover up the property from McCreary's creditors. This possession by McCreary's mother must be in pursuance of the sale or transfer aforesaid, and exclusive and distinct, and so continued. But if it were so in the first place, and McCreary did not accompany the goods to his mother, but went with his family to Canonsburg, there intending to reside, and remained a few weeks, but afterwards returned with his family to his mother's, this would not vitiate the transfer originally made to his mother (the plaintiff), if she still continued to have and retain exclusive possession and control of the goods. And this exclusive control and possession, if otherwise right and fair, might exist consistently with the occasional use afterwards, by plaintiff's wife, of the piano."

Under these instructions there was a verdict and judgment for plaintiff for $180; whereupon the defendants sued out this writ, and assigned for error the admission of Dr. McCreary as a witness, the refusal of the court to affirm the points above mentioned, and the rejection of the auditor's report.

*J. W. F. White*, for plaintiff in error, argued:—I. That Dr. McCreary was not a competent witness for the plaintiff.

1. Because he was her vendor, and had impliedly warranted to her a good title, citing in support of this proposition, 1 Gr. Ev. §§ 397, 398; 2 Phil. Ev. 894; Search's Appeal, 1 Harris 11; Freeman *v.* Caldwell, 10 Watts 9. That although both parties claimed under him, his interest was not balanced, because he was liable to one of them, and not to the other. Miller *v.* Fitch, 7 W. & S. 366, relied on by defendant in error, is not fully reported, and conflicts with the above authorities; but even that case does not decide that a vendor is competent to prove delivery. Dr. McCreary was the sole witness in the case. As vendor, the law imposed on him a certain liability, which *primâ facie* excluded him as a witness. He could not, by his own testimony, relieve himself. See also Moore *v.* McKee, 5 Smedes & Marsh. 238; Hale *v.* Smith, 2 Greenl. 416; Freeman *v.* Lewis, 5 Iredell 91; Cadbury *v.* Nolen, 5 Barr 320; Faunce *v.* Lesley, 6 Barr 121; Keymborg & Co. *v.* Burbridge & Co., 1 Jones 535;

[Graham and Mellor v. McCreary. ]

Forsyth v. Palmer, 2 Harris 96; Shill v. Haywood & Snyder, 4 Harris 523; Helfrich v. Stem, 5 Harris 152.

2. The piano was found in his possession, and he was incompetent to explain away the fact of possession. Although his mother was with him, it was in a house rented and occupied by him. This possession was *primâ facie* evidence of ownership, which he could not destroy by his testimony. Suppose the legal title and legal possession were in the plaintiff, by permitting it to be sold for his debt was not Dr. McCreary liable for its value to the real owner ?

II., III. Although the court appeared to affirm the first point, they omitted to charge as therein requested, that the possession of the plaintiff should be distinct, exclusive, and *continued*. The second point should have been affirmed.

IV. The jury should have deducted the amount of the rent from the value of the piano in assessing the damages, for the landlord's claim of $121 was a lien on it for which the piano might have been taken by him. Mellor did not injure Mrs. McCreary to the whole value of the piano.

*Thomas Ewing*, for defendant in error.—1. At the time Dr. McCreary was called, evidence had been offered which precluded the defendants from disputing the previous good title of the witness. Their whole case asserted a perfect title in him. That point was not in dispute.

The vital mistake underlying the argument of the counsel of plaintiff in error is in supposing that a vendor warrants *the vendee's title for ever*, instead of *his own at the time of the sale*.

All the Doctor warranted when he sold the piano to his mother was, that his title was good at the time, and this was not disputed, nor was he called to prove it, but to prove matters connected with it, which occurred afterwards. Miller v. Fitch, 7 W. & S. 366, is full, clear, and conclusive on this point, and the cases cited for plaintiff in error are really not in conflict with it.

2. As to the possession of the piano, Mrs. McCreary had it exclusively from February to June or July, beyond a doubt, in a different county, and thirty miles distant from Dr. McCreary and wife. The fact that they afterwards lived in the same house did not destroy this: Brady v. Haines, 6 Harris 113.

The charge is sustained by the severest rulings of this court, in Babb v. Clemson, 10 S. & R. 519, and Young v. McClure, 2 W. & S. 147.

The opinion of the court was delivered, October 31st 1861, by

THOMPSON, J.—If the contest in this case had turned on the question of title in the witness when he sold the piano, the objection to his competency would have been quite another thing, and

[Graham and Mellor *v.* McCreary.]

might have been successful: Greenl. Ev., vol. 1, §§ 397–98; 2 Phillips 894; 1 Harris 111. But this was not the point in con test. Both parties claimed through him, and thus affirmed his title. He was not called, therefore, to support his title; but to prove a sale of the property, a fact necessary to the plaintiff, and which the defendants denied. They did not rely on the absence of title in the witness, but only that his transfer to the plaintiff was fraudulent either in law or fact. If it were either, the sale surely did not imply a guarantee on his part that such a transaction should be effectual to vest title in his participant in the fraud. The defendants alleged that it was a collusive transaction to defraud creditors, and in that aspect they could not apply a doctrine which a vendee might do if the title failed by reason of a fraud in the sale. But the question is settled by the case of Miller *v.* Fitch, 7 W. & S. 366, in which it is distinctly ruled in a case like the present, and where the objection was the same, that the vendee was a competent witness.

Being admitted, the witness, if believed, proved a sale and the delivery of possession of the piano to the plaintiff, his removal from the county immediately thereafter with a view to a permanent residence, and the exclusive possession of his mother, who continued to live in this county until his return. It is true that he further testifies that after a few weeks, not succeeding as he expected, he and family returned to this county. After this his mother became again a resident with him, and the piano was kept at his house, and used by his wife, with the permission of his mother. From these facts, a court could not pronounce the transaction a fraud in law. There was in appearance, at least, a substantial delivery and transfer of the possession, and so retained exclusively for four or five weeks. This length of time was thought to be sufficient, in Brady *v.* Howes, 6 Harris 113, when there was nothing to show it to have been a delivery merely *pro forma*, to prevent the operation of the doctrine in cases of fraud in law from applying, to turn it into a question of fact as to whether the transaction was collusive or not; and see Smith's Leading Cases, 5th Am. ed., p. 73. The court dealt with the case accurately in this aspect, and we see no error in it.

No bill of exceptions seems to have been sealed to the rejection of the auditor's report, and we cannot notice this assignment of error. It is quite apparent that if there had been, it would not have availed the defendants. It was not evidence in any point of view which was claimed for it.

Judgment affirmed.